UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **EDWARD JARMON,**<br>        Plaintiff,<br><br>v.<br><br>**KILOLO KIJIKAZI,**<br>**Acting Commissioner**<br>**of the Social Security**<br>**Administration,**<br>        Defendant. | Case No. 4:20-cv-1072-CLM |

## MEMORANDUM OPINION

Edward Jarmon seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Jarmon's application in an opinion written by an Administrative Law Judge ("ALJ"). The SSA's Appeals Council then denied Jarmon's request for review.

Jarmon argues: (1) that the Appeals Council erred in finding that two physical capacities evaluations submitted to it weren't chronologically relevant; (2) that both the ALJ and Appeals Council failed to properly determine his date of disability; and (3) that the ALJ erred in relying on testimony from a vocational expert to deny benefits.

As detailed below, neither the ALJ nor the Appeals Council reversibly erred. So the court will **AFFIRM** the SSA's denial of benefits.

## I. STATEMENT OF THE CASE

### A. Jarmon's Disability, as told to the ALJ

Jarmon was 43 years old on his alleged disability onset date and 47 years old on his date last insured. (R. 477). And Jarmon is a high school graduate. (R. 489). Jarmon has past relevant work as a computer numerical control ("CNC") machinist. (R. 82–83).

At the ALJ hearing, Jarmon testified that he had to leave his CNC machinist job after having several carpal tunnel surgeries. (R. 67). According to Jarmon, his index and middle fingers don't work and are uneven. (R. 67–68). But gloves help Jarmon grip items with his hands. (R. 68). Jarmon also said that his hands go numb about 3 to 4 hours a day. (R. 70–71). And Jarmon has had injections in both elbows. (R. 71).

Jarmon has also had surgery on both knees. (R. 71–72). According to Jarmon, he needs knee replacement surgery, and his knees cause him problems when he needs to twist and pivot. (R. 72). Plus, Jarmon suffers from hearing loss, but he doesn't wear hearing aids. (R. 74). And Jarmon has an immune deficiency disorder and arthritis. (R. 78–80).

Despite his carpal tunnel, Jarmon can hold a hammer. (R. 69). And though it's painful, he'll also weed eat once a year. (*Id.*). Jarmon drives, but he cannot hold onto the steering wheel at ten and two. (*Id.*). Jarmon was a gym rat when he was younger. (R. 80). So in 2016, he was still exercising regularly, riding a bike, and using a cross trainer. (*Id.*). But Jarmon got to a point where his pain was so great that he had to stop working out. (*Id.*).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| \   | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.   Jarmon's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Jarmon applied for disability insurance benefits and a period of disability in October 2017, claiming that he was unable to work because of various ailments, including rheumatoid arthritis, chronic pain syndrome, carpal tunnel syndrome, tarsal tunnel syndrome, hard of hearing, and knee injuries. (R. 488). After receiving an initial denial in February 2018, Jarmon requested a hearing, which the ALJ conducted in August 2019. The ALJ ultimately issued an opinion denying Jarmon's claims in September 2019.

At Step 1, the ALJ determined that Jarmon was not engaged in substantial gainful activity from his alleged onset date of January 1, 2013 to December 31, 2016, his date last insured. (R. 42). Thus, Jarmon's claims would progress to Step 2.

At Step 2, the ALJ determined that Jarmon suffered from the following severe impairments: bilateral carpal tunnel syndrome, status post carpal tunnel release; degenerative changes of the right hand/wrist; left knee degenerative joint disease, status post multiple arthroscopic surgeries; left and right foot osteoarthritis; and left tarsal tunnel syndrome.

At Step 3, the ALJ found that none of Jarmon's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Jarmon's residual functional capacity.

The ALJ determined that Jarmon had the residual functional capacity to perform light work with these added limitations:

- Jarmon can only occasionally climb ramps and stairs.

- Jarmon cannot climb ladders, ropes, or scaffolds.

- Jarmon can engage in unlimited stooping.

- Jarmon can frequently balance, kneel, crouch, and crawl.

- Jarmon can engage in frequent bilateral handling, fingering, and feeling, but with no repetitive or constant usage.

- Jarmon must avoid concentrated exposure to extreme temperatures, loud noisy work environments, wetness, and humidity.

- Jarmon must also avoid all hazards, such as open flames, unprotected heights, and dangerous moving machinery.

At Step 4, the ALJ found that Jarmon could not perform his past relevant work.

At Step 5, the ALJ determined that Jarmon could perform jobs, such as furniture-rental clerk, cashier II, and counter clerk, that exist in significant numbers in the national economy and thus Jarmon was not disabled under the Social Security Act.

### D.  Appeals Council's Decision

Jarmon requested an Appeals Council review of the ALJ's decision. As part of his request for review, Jarmon submitted physical capacities evaluations from his treating physicians, Dr. Rommel Go and Dr. Luis Pineda. (R. 21, 32). The Appeals Council denied Jarmon's request for review and did not exhibit this evidence, finding that it did "not relate to the period at issue." (R. 2).

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Jarmon makes three arguments for why the SSA erred in denying his request for benefits. First, Jarmon argues that the Appeals Council wrongly denied his request for review when it determined that the physical capacities evaluations weren't chronologically relevant. Second, Jarmon asserts that both the ALJ and the Appeals Council failed to properly determine his date of disability. Finally, Jarmon contends that the ALJ erred in relying on a vocational expert's answer to his hypothetical question to deny benefits. The court will address each argument in turn.

### A.   New Evidence to Appeals Council

Jarmon first argues that the Appeals Council erred in denying his request for review because the physical capacities forms from Dr. Go and Dr. Pineda were chronologically relevant. The Appeals Council will review an ALJ's decision if it "receives additional evidence that is new, material, relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 CFR § 404.970(a)(5).

1. <u>Background</u>: Jarmon submitted physical capacities forms from Dr. Rommel Go and Dr. Luis Pineda as "new evidence" for the Appeals Council to consider in the first instance. These one-page forms required Dr. Go and Dr. Pineda to check boxes, circle 'yes' or 'no,' or fill in short blanks about various disability-related topics.

Dr. Go treats Jarmon at Go Medical Group. He filled out a physical capacities form on Jarmon's behalf in February 2020. In the physical capacities form, Dr. Go circled that Jarmon can sit upright in a chair for 3 hours at a time and stand for an hour at a time. (R. 21). Dr. Go then said he expected Jarmon to be lying down, sleeping, or sitting with legs propped at waist level for 6 out of 8 daytime hours. (*Id.*). Dr. Go also checked that Jarmon's limitations existed back to "1/1/13," Jarmon's alleged disability onset date. (*Id.*). And Dr. Go responded that he expected Jarmon's condition to last 12 or more months. (*Id.*). Dr. Go then marked that Jarmon can occasionally lift 5 to 50 pounds but can never lift 50 to 100 pounds. (*Id.*). According to Dr. Go, various conditions, including arthritis, IGG deficiency, previous orthopedic surgeries, chronic pain, hearing loss, chronic upper respiratory infections, depression, hypogonadism, and low testosterone, caused these symptoms. (*Id.*). Dr. Go finally stated that side effects of Jarmon's medications are increased pain, nausea, constipation, fluid retention, redness/swelling of joints, rashes, thrush, and increased blood pressure. (*Id.*).

Dr. Pineda is Jarmon's hematologist. He filled out a physical capacities form on Jarmon's behalf in November 2019. In the physical capacities form, Dr. Pineda circled that Jarmon could sit upright in a standard chair for 2 hours at a time and stand for less than 30 minutes at a time. (R. 32). Dr. Pineda then said that he expected Jarmon to be lying down, sleeping, or sitting with legs propped up at waist level or above for 6 out of 8 daytime hours. (*Id.*). Dr. Pineda also responded that he expected Jarmon to be off task 80% of the time in an 8-hour day and to miss 7 to 10 days of work in a 30-day period. (*Id.*). Like Dr. Go, Dr. Pineda checked that these limitations existed back to "1/1/13." (*Id.*). According to Dr. Pineda, the conditions causing Jarmon's limitations included depression,

anxiety, hypogonadism, low testosterone, Raynaud's disease, hypertension, CVIG, Rheumatoid arthritis, osteoarthritis, carpal tunnel syndrome, neuropathy, constipation, blood clots in lungs, asthma, vitamin D deficiency, previous right knee surgeries, aspiration pneumonia, and aspergillus. (*Id.*). Dr. Pineda finally stated that side effects of Jarmon's medications are nausea, fluid retention, inflammation, weakness, fatigue, rashes, insomnia, blurry vision, constipation, gastric reflux, dry mouth, hypertension, and increased blood sugars. (*Id.*).

2. <u>Chronological Relevance</u>: The Appeals Council didn't exhibit the physical capacities forms, finding that they were not chronologically relevant. (*See* R. 2 ("This additional evidence does not relate to the period at issue," so "it does not affect the decision about whether you were disabled beginning on or before December 31, 2016.")). Relying on *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317 (11th Cir. 2015), Jarmon argues that even though these new medical records are dated after the ALJ's hearing decision and his date last insured, they are chronologically relevant. *See id.* at 1322–23 (recognizing that medical opinions issued after the ALJ's decision may be chronologically relevant if the opinions stem from medical records from the period before the ALJ's decision). But the Commissioner argues that these opinions don't relate to the relevant period—*i.e.*, the period between Jarmon's alleged disability onset date and date last insured.

The court agrees with the Commissioner. Checking a box that a claimant's limitations existed back to the relevant period isn't enough to show that a medical opinion is chronologically relevant. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309–10 (11th Cir. 2018). That's true even if, as here, the doctors giving the opinions treated the claimant before the ALJ issued his hearing decision. *See Howze v. Soc. Sec. Admin.*, 2022 WL 152236, at *3 (11th Cir. Jan. 18, 2022). Instead, for post-ALJ hearing decision forms to be chronologically relevant, there must be some evidence that the doctors "evaluated [the claimant's] past medical records when forming" their opinions. *Hargress*, 883 F.3d at 1310. And here, nothing suggests that Dr. Go or Dr. Pineda relied on Jarmon's earlier

8

medical records to find that he had limitations existing back to January 2013.

What's more, the relevant period at issue isn't the period from Jarmon's alleged disability onset date to the day of the ALJ's hearing decision. Instead, the relevant period is Jarmon's alleged disability onset date to December 31, 2016—Jarmon's date last insured. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). And as the Commissioner points out, Dr. Pineda didn't begin treating Jarmon until 2019. (R. 49, 1179). Dr. Go and his staff also didn't treat Jarmon before his date last insured. They instead only began treating Jarmon in August 2018. (R. 248). So Jarmon hasn't shown that the physical capacities forms relate to the period on or before his date last insured. As a result, the Appeals Council didn't err in refusing to exhibit this evidence and denying Jarmon's request for review.

### B. Disability Onset Date

Jarmon next asserts that the ALJ and Appeals Council erred in evaluating his disability onset date. This argument has two parts.

1. <u>Disability onset</u>: Jarmon first argues that the ALJ and Appeals Council violated SSR 83-20 because they did not obtain expert testimony to determine his disability onset date. According to SSR 83-20, "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20, 1983 WL 31249, at *1. And an ALJ "should call on the services of a medical advisor when onset must be inferred." *Id.* at *3. Jarmon's argument that the ALJ and Appeals Council violated SSR 83-20 fails for three reasons.

First, SSR 18-01p rescinded and replaced SSR 83-20 for all claims pending with the Commissioner on or after October 2018, including Jarmon's. *See* SSR 18-01p, 2018 WL 4945639, at *7. And under SSR 18-01p, "[t]he decision to call on the services of an [medical examiner] is always at the ALJ's discretion." *Id.* at *6. In fact, "[n]either the claimant nor his or her representative can require an ALJ to call on the services of

9

an [medical examiner] to assist in inferring the date that the claimant first met the statutory definition of disability." *Id.* So the rules Jarmon cites from SSR 83-20 are outdated and don't apply to his claim for benefits.

Second, in several unpublished opinions, the Eleventh Circuit has found that SSR 83-20's requirement that an ALJ use a medical expert to determine the disability onset date applies only ***after*** the ALJ finds that the claimant is disabled. *See Castleman v. Comm'r, Soc. Sec. Admin.*, 824 F. App'x 927, 929 (11th Cir. 2020); *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010). And here, the ALJ found that Jarmon was not disabled. (R. 51). So the court finds that—even if SSR 83-20 still controlled—the requirement that the ALJ use a medical examiner to determine the claimant's disability onset date doesn't apply to these facts.

Finally, Jarmon has the burden to prove he's disabled and has to provide evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). That includes a duty to provide evidence of when he "first met the statutory definition of disability." *See* SSR 18-01p, 2018 WL 4945639, at *4. And here, Jarmon alleged in his disability report that he became disabled on January 1, 2013. (R. 477). Then, after the ALJ denied Jarmon's claim, Dr. Go and Dr. Pineda filled out preprinted forms that asked them to check that Jarmon's limitations existed back to January 1, 2013. (R. 21, 32). Indeed, it doesn't look like Jarmon ever alleged that another disability onset date should apply. And though the ALJ found that Jarmon wasn't disabled, he assumed that January 1, 2013 would be the disability onset date and never questioned whether another alleged disability onset date was more appropriate. (R. 40–51). So it's puzzling for Jarmon to now argue that the ALJ needed to consult a medical expert to determine the correct disability onset date. In short, this argument fails.

2. <u>Evaluation of opinions</u>: Buried within Jarmon's argument about the need to determine his disability onset date, appears to be an argument that the Appeals Council and ALJ needed to defer to opinions from Dr. Go

and Dr. Pineda that Jarmon has suffered disabling limitations since January 1, 2013. As explained, Jarmon has failed to show that the opinions expressed in Dr. Go and Dr. Pineda's physical capacities forms were chronologically relevant. So the Appeals Council didn't need to consider these opinions, much less defer to them.

And Jarmon's argument that the opinion the ALJ considered from Dr. Pineda establishes that Jarmon has had disabling limitations since 2013 fails for two reasons. First, by failing to devote a discrete section of his brief to this argument, Jarmon has abandoned it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) ("Abandonment of an issue can also occur when passing references appear in the argument section of an opening brief, particularly when the references are mere 'background' to the appellant's main arguments or when they are 'buried' within those arguments.").

Second, this argument fails on the merits. In July 2019, Dr. Pineda wrote a letter that stated that he had recently diagnosed Jarmon with IGG Deficiency and that "this is likely an issue that has been undiagnosed for many years." (R. 1179). According to Dr. Pineda, Jarmon was "a candidate for full disability caused from the IGG Deficiency along with multiple orthopedic issues and complications." (*Id.*). Though Dr. Pineda acknowledged that Jarmon only became his patient in May 2019, he stated that in his opinion "due to [Jarmon's] past medical history presented to me he has suffered from IGG complications for many years." (*Id.*). The ALJ considered this opinion and found it unpersuasive. (R. 49). According to the ALJ, Dr. Pineda's letter was poorly supported "as Dr. Pineda noted that he had only treated the claimant since May 2019, (Exhibit 20F), and stated that he based his statement on '[the claimant's] past medical history presented to me.'" (*Id.*). The ALJ also found Dr. Pineda's letter to contradict medical records through the date last insured, "which showed no recurrent infections or other symptoms consistent with IgG deficiency." (*Id.*).

Jarmon argues that because Dr. Pineda was his treating physician the ALJ needed to give his opinion substantial or considerable weight absent good cause to disregard the opinion. But as this court has recently explained, that rule no longer applies to claims, like Jarmon's, which were filed on or after March 27, 2017. *See Douglas v. Saul*, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021). Instead, under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 CFR § 404.1520c(a).

These new regulations instead require an ALJ to focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 CFR § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 CFR § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 404.1520c(c)(2).

The ALJ's analysis of Dr. Pineda's opinion shows that he applied the correct legal standard by evaluating the opinion's persuasiveness based on the factors of supportability and consistency. And it was reasonable for the ALJ to conclude that Dr. Pineda's opinion wasn't supported when: (1) he hadn't treated Jarmon during the relevant period; and, (2) didn't explain what medical records he relied on to determine that Jarmon had been suffering from an IGG deficiency for several years. Plus, having reviewed Jarmon's medical records, particularly those the ALJ cited, the court finds it reasonable for the ALJ to conclude that they contradict Dr. Pineda's opinion because they showed no recurrent infections or other symptoms of IGG. So the ALJ didn't err in finding Dr. Pineda's opinion unpersuasive. As a result, the ALJ didn't need to defer to Dr. Pineda's opinion that Hardin was suffering from disabling IGG deficiency during the relevant period.

The court also rejects Jarmon's argument that the ALJ needed to recontact Dr. Pineda to clarify his opinion. In support of this argument, Jarmon cites *Johnson v. Barnhart*, 138 F. App'x 266, 270–71 (11th Cir. 2005), which states that "[i]f after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians." *Id.* at 270. "But saying the ALJ can sometimes reach out to a physician if necessary is not the same thing as saying that the ALJ must always reach out to a physician." *Jones v. Soc. Sec. Admin. Comm'r*, 857 F. App'x 587, 591 (11th Cir. 2021). And because the ALJ ***could make*** a disability determination here, there was no need for him to recontact Dr. Pineda. *See id.*

\* \* \*

In short, the Commissioner didn't err in failing to obtain expert testimony about Jarmon's disability onset date. Nor did the Commissioner have to defer to Dr. Go and Dr. Pineda's opinion that Jarmon was disabled during the relevant period.

### C.    Vocational Expert's Testimony

Jarmon finally argues that the ALJ erred in relying on a vocational expert's testimony to deny benefits because the hypothetical question posed to the vocational expert didn't accurately state his pain level or residual functional capacity.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *See Crawford*, 363 F.3d at 1161.

Though Jarmon cites the standard of review for vocational expert testimony, his briefs don't explain why the hypothetical question the ALJ relied on is deficient. Instead, Jarmon simply states, "[t]he [vocational

13

expert] testimony is not sufficient evidence because the hypothetical question relied upon by the ALJ in denying benefits did not fully state Claimant's impairments and limitations." (Doc. 12 at 38). He then notes that the ALJ asked an alternative hypothetical—*i.e.*, one that the ALJ didn't rely on—that assumed Jarmon needed frequent unscheduled work absences. But Jarmon doesn't elaborate on this argument or point to evidence that establishes that he needs this accommodation.

"[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this court from] considering the issue on appeal." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009). And this court cannot—and will not—make Jarmon's arguments for him. *See Sapuppo*, 739 F.3d at 681. So Jarmon's failure to explain why the ALJ's hypothetical question to the vocational expert was deficient means he has abandoned this argument. In any event, having reviewed the evidence, the court finds that the record doesn't establish that the ALJ had to include a limitation for frequent unscheduled work breaks in the hypothetical question he relied on. So the ALJ didn't err in relying on the vocational expert's answer to this hypothetical question to deny benefits.

### IV. CONCLUSION

The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision, and the Appeals Council did not err in denying Jarmon's request for review. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on March 4, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE